## Flack & Company, Appellant, v. Central Trust Com--pany of Illinois, Appellee.

### Gen. No. 19,365.

1. BANKS AND BANKING, § 115*—*sufficiency of declaration in suit for wrongful payment of check.* In an action by a depositor against a bank for wrongful payment of a check which was drawn payable to third parties, the declaration *held* defective in stating plaintiff's right to maintain the action.

2. APPEAL AND ERROR, § 866*—*when abstract of record insufficient.* An abstract consisting of a mere index of the record is insufficient.

3. BANKS AND BANKING, § 134*—*when evidence insufficient to show bank liable for wrongful payment of check.* In an action by the drawer of a check against the bank on which it was drawn to recover the amount of the check on the ground that the bank did not pay the check to the proper payees, *held* that a judgment entered on a verdict for defendant would be affirmed, it not appearing by what right the plaintiff was entitled to maintain the action, and it appearing that the check went to and was paid to the persons that a representative for the plaintiff intended.

Appeal from the County Court of Cook county; the Hon. W. F. SLATER, Judge, presiding. Heard in this court at the March term, 1913. Affirmed. Opinion filed October 13, 1914.

BENJAMIN F. J. ODELL, for appellant.

EDWIN L. WAUGH, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of the County Court of Cook county rendered November 9, 1912, on the verdict of a jury. The judgment was in favor of the defendant below, who had been sued by the plaintiff in an action of assumpsit. The declaration contained the consolidated common counts and two special counts. General demurrers were filed to the two special counts. These demurrers were overruled by

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the court. Why they were overruled we confess we are unable to see. The counts both alleged that the plaintiff made its check for $1,452 to the order of Henry F. Kath and Ernestine Kath, and that the defendant accepted the check and became liable to pay it according to its tenor and effect, and then, without alleging any indorsement by the Kaths to the plaintiff or any one else, assert that the defendant promised to pay, and is liable for, the amount of the check to the plaintiff. The second count does indeed say that the check was "the property of the plaintiff," but does not give any reason for the Trust Company's being liable primarily to the maker on a check which it had accepted, payable to third parties. The first count does not even assert the check to be the property of the plaintiff.

We mention this, although the cause went on through subsequent pleadings and a jury trial to a conclusion which obviates the necessity of a consideration of questions on the pleadings, because the defect of the declaration seems to be significant of a defect in the very basis of the plaintiff's case. It does not seem anywhere to have proven any title to the check or the proceeds of it. If the action is to be taken, so far as the common counts go, as one for money deposited by the plaintiff to its own credit with the defendant, there still would be no evidence to support a judgment in its favor. There is no evidence of any deposit or of demand for return or of refusal. The proceedings of the plaintiff, if that was the theory, would seem to be entirely misconceived.

It would be impossible from the abstract of the record presented by the appellant, the plaintiff, to gather any idea of what the suit or the appeal is about. It does not conform to the rule in any particular, and the judgment might well, and indeed we think ought to be, affirmed on that ground alone. Why the appellant's counsel, having made nothing but an "index" of the record for an abstract, should have taken the

trouble to duplicate his work by making an index for that index, is another thing we do not understand about the case. Having violated the rule wholly in the one matter, he might have saved himself the trouble of conforming to it in the other.

Nor do we feel very much more enlightened by the additional abstract which the appellee's counsel has filed, nor by the none too explicit "statements of the case" by which we are supposed to be informed in the printed arguments.

But going to the record for information, as we are under no obligation to do, and perhaps should not have done, we find that the facts from which the case seems to have arisen are these:

Prior to April 27, 1908, a man named Stanage, who appears to have been a nonresident, and one Seagraves, who lived in Chicago and was doing business under the name of Lloyd J. Long & Co. (although Long was in reality working for Seagraves in Seagraves' office on a salary or commission), owned a piece of land in Chicago which was subject to a $12,000 mortgage. But although they two, Stanage and Seagraves, were the real or beneficial owners each of one-half interest in this land (subject to the incumbrance described), the legal title was in one Henry F. Kath, who was, as Seagraves expresses it, "a dummy." He. had no beneficial interest in the property. He lived in New Boston, Illinois. On the equity in this property Seagraves and Stanage wished to obtain a loan. Seagraves seems to have applied to one Odell, a lawyer, and Odell, purporting to represent the plaintiff herein, "Flack & Company, a corporation" (whose identity does not otherwise appear, except that one G. I. Odell was president and treasurer), agreed to loan them for Flack & Company $1,452, of which, however, $252, representing with expenses a commission of 20 per cent. on the amount actually to be received and retained by Stanage and Seagraves, was to be paid back to Odell at once.

The method adopted of arranging the security for the loan was suggested by Odell. A power of attorney was drawn running to Lloyd J. Long and executed by Henry F. Kath and Ernestine A. Kath, his wife, authorizing said Long "to bargain, sell and convey all of my rights, interests and title" in the land, and "giving and granting unto Lloyd J. Long, said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises." Armed with this, Long executed May 13, 1908, in the name of Henry F. Kath and Ernestine A. Kath a quitclaim deed of the property to one Jessie A. Matthews, whose identity does not further appear than that she was designated for such grantee by Odell. At the same time Long also executed and delivered to Odell several notes of $140 each to represent and evidence the indebtedness to Flack & Company, signing them "Henry F. Kath and Ernestine A. Kath by Lloyd J. Long, their Atty. in fact."

There were at least ten of these notes, the balance being probably represented otherwise or repaid at once in cash.

Jessie Matthews contemporaneously signed and acknowledged a contract, which Long also signed "Henry F. Kath by Lloyd J. Long, his Atty. in fact." By this contract Jessie Matthews undertook to reconvey the land in question (subject to the $12,000 incumbrance) to Henry F. Kath on payment of $1,452 in monthly instalments of $140.

From the recitals in one of the notes introduced in evidence it would appear that a trust deed was also made to Grace I. Odell, trustee, to secure the notes of $140, but this is not clear. Perhaps the conveyances served as a satisfactory substitute for the trust deed originally proposed. However that may be, on the complete execution of such papers as were executed to evidence the loan and security, Flack & Company's

check, signed "Flack & Company, G. I. Odell, Pres. and Treas.," for $1,452, drawn on the Central Trust Company, was given by Mr. Odell to Long at Seagraves' office. It was dated May 15, 1908, and was made payable to Henry F. Kath and Ernestine A. Kath. Odell showed or directed Long how to indorse the check, Seagraves says. At all events Long *did* indorse the check—

> "Henry F. Kath,
> Ernestine A. Kath,
> By Lloyd J. Long,
> their attorney in fact."

Seagraves then indorsed the check himself and Lloyd J. Long indorsed it individually and Seagraves and Odell went to Greenebaum Sons' Bank and Seagraves deposited the check thus indorsed to the deposit account of "Lloyd J. Long." It was collected by Greenebaum & Company through the clearing house in the usual course of business from the Central Trust Company, on which it was drawn. This is the check, the payment of which is claimed to be a cause of action herein by Flack & Company, because, it says that the Kaths did not receive the money on it. Why this gives an action to Flack & Company on it we have before said, we cannot see. Proceeding with the story of the transactions, after the deposit was made to Long's account Seagraves at once drew two checks on Greenebaum Sons, signed "Lloyd J. Long, per C. I. Seagraves." As these were promptly paid, it is evident that at Greenebaum Sons Bank Seagraves was doing business not under the name of "Lloyd J. Long & Co.," but under the name of "Lloyd J. Long."

One of the checks was for $502.50 and was payable to the order of Greenebaum Sons. For it was obtained a draft on New York, signed Greenebaum Sons, to the order of Henry F. Kath. This draft was sent to Kath, who indorsed it "Pay to the order of W. P. Stanage, Henry F. Kath." W. P. Stanage indorsed it and

presumably obtained the money from the Citizens Central National Bank of New York, on which it was drawn. It represented his interest in the loan on the property. The other of the checks was for $252 and was to the order of Seagraves himself. It was exchanged for currency by Greenebaum Sons and the currency given by Seagraves to Odell for his commission and expenses, in accordance with the prior arrangement.

We have no doubt that matters occurred as thus recited, despite the half-hearted denials by Kath of his indorsement of the draft and the attempt to impeach the reputation for veracity of Seagraves, who gave the account of the transactions.

Apart from the entire want of any cause of action in the plaintiff against the defendant shown by them, even if the indorsement of the Kaths by Long on the $1,452 check had been unauthorized, and the payment of it wrongful, we think that the indorsement was not unauthorized or the payment wrongful. The defendant paid the check and is not liable to anybody longer on it or for the funds on which it was drawn. Kath was, to the knowledge of the plaintiff's authorized and sole representative, a "dummy" acting through Long. The check went to the persons and was paid to the persons that Flack & Company's representative meant it to go to. Neither it nor he have reason to complain. They are estopped from doing so by the whole course of the transactions. The instructions were given on this theory and were not erroneous.

The judgment is affirmed. An allowance should be made in the costs for the additional abstract. It was necessary, although not satisfactory.

*Affirmed.*